**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**AMANDA BAIN and ROBERT B.
CANTWELL,**

                      Plaintiffs,        1:06-CV-0075
                                                      (GLS/DRH)

            v.

**TOWN OF ARGYLE and ANDREW J.
WILLIAMSON, individually and in
his official capacity,**

                      Defendants.
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFFS:**

HARDING LAW FIRM           CHARLES R. HARDING, ESQ.
1343 Balltown Road
Niskayuna, New York 12309

**FOR THE DEFENDANTS:**

MURPHY, BURNS LAW FIRM    PETER G. BARBER, ESQ.
4 Atrium Drive
Executive Woods
Albany, New York 12205

**Gary L. Sharpe
U.S. District Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiffs Amanda Bain and Robert Cantwell (herein Bain) bring this action, pursuant to 42 U.S.C. § 1983, challenging the Town of Argyle's revocation of their building permits. *See Dkt. No. 1.*[1] The court previously denied defendants' motion to dismiss and held that Bain's complaint sufficiently plead a cause of action based on the Town's revocation policies. Pending are defendants' motion for summary judgment and Bain's cross-motion to extend discovery. *See Dkt. Nos. 30, 31.* For the following reasons, defendants' motion is granted, and Bain's motion is denied.

### **II. Background**

**A.   Town of Argyle Local Law**

In 2003, the Town of Argyle enacted a local law that states: "no mobile home shall hereafter be placed...outside of a licensed mobile home park, except [when it]...constitutes a preexisting non-conforming use[.]" *Town of Argyle Local Law No. 1 § IV (2003); Dkt. No. 8, Ex. 4.* Moreover,

---

[1] Bain had obtained building permits to replace two older mobile homes on her property with newer models. *See Dkt. No. 1.* The permits were later revoked when it was discovered that the new homes would violate the local law. *See id.*

2

"[a]ll mobile homes...lawfully existing at the date of the adoption of this local law shall be permitted to remain as preexisting non-conforming uses." *Id.* at § VI(1). However, for a mobile home park to be considered preexisting non-conforming use, "the park must still comply with all applicable sanitary water and sewer guidelines[.]" *Id.* at § VI(2). Further,

> if the mobile home is unoccupied as a primary residence for a period of six months or is removed from the parcel and is not replaced within a period of two (2) months by a mobile home in compliance with this law, the status of such mobile home as a pre-existing non-conforming use is immediately forfeited[.]

*Id.* at § VI(2)-(3). Lastly, "[n]o more than one (1) mobile home...may occupy a lot, except for mobile homes...sited by special permit or located in a mobile home park." *Id.* at § VIII(4).

**B.     Certificate of Compliance**

In July 2005, Bain sought a Certificate of Compliance to replace the two old mobile homes on her property with two new ones. *See Defs. SMF ¶8; Dkt. No. 30.* At this time, Town Supervisor, Andrew Williamson, informed Bain that the newer homes would be permissible as a preexisting, non-conforming use under the 2003 law. *See id.* at ¶7. Based on Williamson's approval, Bain obtained two separate building permits to place the new homes on the property. *See id.* at ¶¶8-11. Following the

3

issuance of the permits, Bain expended considerable time and money to prepare the property for the new mobile homes.  Specifically, Bain installed utilities and a septic system, laid foundation, purchased two new models, cleared the land, and hired contractors.  *See Pl. SMF ¶25; Dkt. No. 31.*

In October 2005, Williamson received complaints from local residents about Bain's intended use of the property.  *See Defs. SMF ¶12, Dkt. No. 30.*  Upon further review and consultation with the Town Attorney, Williamson determined that Bain's plans were in fact illegal under the local law.  *See id.*  Specifically, through an examination of the Town Tax Assessor's records,[2] Williamson discovered that the property had been abandoned and unoccupied as a primary residence for well over six months.  *See id.* at ¶¶12-14.[3]  Based on this conclusion, Williamson informed Bain that her building permits were no longer valid and to cease

---

[2]Bain points out that Williamson did not examine the tax records or consult with the Town Attorney prior to issuing the Certificate of Compliance.  *See Pl. SMF ¶24; Dkt. No. 31.*  However, this observation only strengthens the defendants' assertion that the permit was erroneously granted in the first place.

[3]Bain confirms that the two older mobile homes were abandoned by her family members in 2001.  *See Pl. SMF ¶20; Dkt. No. 31.*  The property went through tax foreclosure and was eventually sold back to Bain by a third party in 2005.  *See id.*  At the time she sought to demolish the older mobile homes, the property and the homes themselves were "badly deteriorated."  *See id.* at ¶21.

4

work immediately. *See id.* at ¶16.[4]  At this time, Williamson also informed Bain that she could seek a variance from the Town Board to continue work on the land. *See Def. SMF ¶14; Dkt. No. 30.* This § 1983 action followed.

### III. Discussion

**A.    Motion for Summary Judgment Standard**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citing FED. R. CIV. P. 56(c)); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165,170 (2d Cir. 2006) (citation omitted). All reasonable inferences must be drawn in favor of the nonmoving party. *See Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

---

[4]Section 8.9(b) of Washington County Local Law permits the County Department of Code Enforcement to revoke a building permit if it was erroneously issued. *See Defs. SMF ¶17; Dkt. No. 30.*

5

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation omitted); *see also SEC. v. Kern*, 425 F.3d 143, 147 (2d Cir. 2005). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). However, "[c]onclusory allegations, conjecture and speculation...are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

**B.   Due Process**

Bain maintains that she holds a vested property interest in the Certificate of Compliance issued by Williamson. She further argues that Williamson's actions violated her substantive and procedural due process rights under the Fourteenth Amendment. *See Town of Orangetown v. Magee*, 88 N.Y.2d 41 (1996) (holding that a landowner has a vested property interest in a validly granted permit when he makes substantial changes and incurs substanial expenses in reliance thereon).

Under § 1983, a due process claim must allege the deprivation of a constitutionally protected interest. *See Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002). To have a protected interest, "a person must have a

6

legitimate claim of entitlement to it." *Id.* (internal quotation marks and citation omitted).  An abstract need, desire or expectation is not enough. *See id.*  When a protected interest is taken away, the next inquiry must be what process is due.  *See Heidorf v. Town of Northumberland*, 985 F. Supp. 250, 256 (N.D.N.Y. 1997); *see also Shelter Inc. Realty v. City of New York*, 01-CV-7015, 2007 WL 29380, at *10 (E.D.N.Y. Jan. 4, 2007) (To establish a due process violation, a plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." (internal quotation marks and citation omitted)).  However, it is also well settled that "a landowner does not have a vested property right to a building permit issued erroneously[.]"  *See Gottlieb v. Vill. of Irvington,* 69 F. Supp.2d 553, 556 (S.D.N.Y. 1999); *see also Parkview Assocs.v. City of New York*, 71 N.Y.2d 274 (1988).  Lastly, "[s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

Here, Bain has failed to establish a valid property interest because it is undisputed that Williamson issued the Certificate of Compliance in error.

7

Under the 2003 amendments to the local law, mobile homes henceforth were only to be located in mobile home parks.  *See Town of Argyle Local Law No. 1 § IV (2003); Dkt. No. 8, Ex. 4.*  This law did not apply to mobile homes that existed outside of mobile parks before the change in the law (these would be considered "preexisting non-conforming uses").  *See id.* at § VI(1).  However, a mobile home loses its status as a preexisting non-conforming use if:

> the mobile home is unoccupied as a primary residence for a period of six months or is removed from the parcel and is not replaced within a period of two (2) months by a mobile home in compliance with this law, ***the status of such mobile home as a pre-existing non-conforming use is immediately forfeited***[.]

*Id.* at § VI(3) (emphasis added)*.*  Likewise, for a mobile home park to be considered a preexisting non-conforming use, "the park must still comply with all applicable sanitary water and sewer guidelines[.]"  *Id.* at §VI(2).

At the time Williamson issued the Certificate of Compliance to Bain, he believed that her replacement of the old mobile homes would constitute a preexisting non-conforming use under the local law.  *See Defs. SMF ¶7; Dkt. No. 30.*  However, upon further inspection, he discovered that the old mobile homes had been uninhabited for over three years.  *See id.* at ¶¶12-

14. Bain admits that her family abandoned the property and the homes in 2001. *See Pl. SMF ¶20, Dkt. No. 31.* Since the mobile homes were unoccupied and did not maintain proper septic or structural requirements, their status as a preexisting non-conforming use was immediately forfeited. *See Town of Argyle Local Law No. 1 § VI(3) (2003); Dkt. No. 8, Ex. 4.* Based on this new information, Williamson revoked the previously granted building permits. *See Defs. SMF ¶16, Dkt. No. 30.*

In conclusion, Bain does not maintain a protected property interest in the permits because they were erroneously granted in the first place. *See Gottlieb,* 69 F. Supp. 2d at 556. Moreover, she has not shown that the Town's actions were outrageously arbitrary or a gross abuse of governmental authority. *See Natale,* 170 F.3d at 263.[5] In sum, the Town's conduct here, even if erroneous, does not rise to the level of a constitutional violation. Accordingly, Bain's procedural and substantive due process claims are without merit, and defendants' motion for summary

---

[5] Even presuming that Bain's due process claims had merit, the court cannot decide whether the government conduct here violated due process because it does not have a final decision before it. *See Williamson County Regional Planning Comm. v. Hamilton Bank*, 473 U.S. 172, 200 (1985) (holding that a takings claim was not ripe because the developer did not seek a variance); *see also Norton v. Town of Islip*, 239 F. Supp. 2d 264 (E.D.N.Y. 2003) (homeowners' substantive due process claim denied because they failed to seek a variance available under the local law).

9

judgment is granted.

## C. Cross-Motion to Extend Discovery

Bain also moves for additional time to conduct discovery. The Uniform Pretrial Scheduling Order reflects that the deadline for discovery passed on December 30th, 2006. *See Dkt. No. 18.* At that time and in the months before, Bain made no effort to extend the discovery deadline. Accordingly, the cross motion is denied.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that defendants' motion for summary judgment **(Dkt. No. 30)** is **GRANTED**; and it is further

**ORDERED** that plaintiff's cross-motion to extend discovery **(Dkt. No. 31)** is **DENIED**, and it is further

**ORDERED** that plaintiff's complaint **(Dkt. No. 1)** is **DISMISSED IN ITS ENTIRETY**, and it is further

**ORDERED** that the Clerk of the Court provide a copy of this Order to the parties.

**IT IS SO ORDERED**.

June 20, 2007  
Albany, New York

*Gary L. Sharpe*  
Gary L. Sharpe  
U.S. District Judge

11